**William Casey McDONALD and Stephanie McDonald, individually and on behalf of their minor children Joanna McDonald, Nicholas McDonald, Brendan McDonald and Emily McDonald, and on behalf of all others similarly situated, Plaintiffs,**

v.

**Marva HAMMONS, et al., Defendants.**

**No. 94 CV 4654.**

United States District Court,
E.D. New York.

Sept. 11, 1996.

David J. Lansner, Lansner & Kubitschek, New York City, for plaintiffs.

Paul A. Crotty, Corporation Counsel, City of New York by Isaac Klepfish, New York City, for defendants.

### *MEMORANDUM AND ORDER*

KORMAN, District Judge.

The accusation of child abuse at the center of this case was made on September 23, 1994,

in an anonymous telephone call to New York City's Emergency Children Services Unit. The caller stated that the children of plaintiffs William Casey McDonald and Stephanie McDonald suffered from poor hygiene, that two had bruises, and that their mother had been seen hitting one of them. In accordance with New York State and City laws requiring that investigations into allegations of child abuse commence within twenty-four hours of a report, *see* New York Social Services Law § 424(5); N.Y.Comp.Codes R. & Regs. tit. 18 § 432.2(b)(3)(i), two caseworkers were dispatched to plaintiffs' apartment at approximately 9:45 pm that night. Mr. McDonald agreed to talk with them in the lobby of the building but refused to permit the caseworkers to enter the apartment. The caseworkers then summoned police assistance. *See* Amended Complaint ¶ 32.

After several police officers had arrived on the scene and engaged Mr. McDonald in a tense exchange, Mr. McDonald brought his children to the lobby of the building and permitted the caseworkers to observe them, but did not allow the children to answer questions. When Mr. McDonald continued to deny requests for access to the apartment, the assembled caseworkers and police eventually left the scene. Two days later a new caseworker and supervisor were assigned to continue the investigation. In response to their renewed demands to enter the apartment, Mrs. McDonald fled the apartment with the children and remained in hiding for approximately one week until the parties stipulated that defendants would take no further action with respect to the reported abuse without advance notice to plaintiffs.

As a result of the foregoing events, plaintiffs William Casey McDonald and Stephanie McDonald and their four minor children have filed this action pursuant to 42 U.S.C. § 1983 against the City of New York, its Social Services and Police Departments, and various officials and employees in those Departments. Plaintiffs contend that "defendants conducted a grossly insufficient and unprofessional investigation" and that "[a]t all times, the city defendants lacked and continue to lack probable cause to remove or detain plaintiffs' children, to search plaintiffs' home, to commence child protective proceedings against plaintiffs, and/or to arrest plaintiffs." Amended Complaint ¶ 51, 53. Plaintiffs complain that they suffered a variety of harms as a result of the investigation, including loss of privacy, loss of liberty, loss of fatherly care, "extreme humiliation, pain and suffering, terror, mental anguish, and depression." *Id.* ¶ 74. They seek five million dollars in actual damages, as well as punitive damages, attorney fees and various forms of injunctive relief.

During the course of litigation, defendants moved to disqualify plaintiffs' counsel from representing the minor children. Although she denied the motion to disqualify, United States Magistrate Judge Azrack agreed with defendants that there was a potential conflict between the parents' interest in maintaining that they have never abused their children and the children's interest in reporting any abuse, if in fact any abuse had occurred. As a practical matter, this conflict might lead the parents to attempt to influence their children to testify falsely at their respective depositions. To address this problem, Magistrate Judge Azrack directed that "a guardian ad litem be appointed for purposes of the preparation of the children for the deposition and the deposition." Tr. of Proceedings Before Judge Azrack, Jun. 20, 1996, at 3. Plaintiffs object to this order and seek to have it set aside.

■ While plaintiffs may be correct in arguing that there is "absolutely no conflict" between the parents and their infant children, this is a case in which, on the current record, there is a potential conflict of interest. This conflict is posed by the fact that the children are being represented by counsel selected and retained by their parents in a case in which the parents' treatment of their children provides the central backdrop. If the children confided in their attorneys that they had been abused, neglected, or otherwise mistreated, their obligation to effectively represent the interests of the children, not to speak of the obligation to ensure that the children testify truthfully, would require them to advise the children to disclose the abuse, or to take steps to permit disclosure, in order to protect the children from

further abuse. This course of action by the attorneys would conflict with the interests of the parents who retained them. Moreover, aside from the potential conflict, if the children have been abused they may not feel comfortable discussing it openly with counsel retained by their parents.

The foregoing discussion is based on the assumption that there is some truth to the claim that the children were neglected or abused. While that remains to be proven, it is sufficient for present purposes to acknowledge the *potential* for conflict implicit in this relationship. The problem of multiple representation presented here, and the imperative to proceed with caution, is well recognized by the ABA's Model Code of Professional Responsibility, which adopts the following approach:

> If a lawyer is requested to undertake or to continue representation of multiple clients having *potentially* differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with *potentially* differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse employment initially.

ABA Model Code of Professional Responsibility, Ethical Consideration 5–15 (emphasis added). Even where representation of multiple parties to the same lawsuit is appropriate,

> it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances.

Ethical Consideration 5–16.

▮ This is not a case in which the normal safeguards can be applied because the children are not competent to determine whether their potential conflict with their parents precludes joint representation. Nor are they competent to "waive" the conflict. As a result, someone else must act on behalf of the children with respect to this issue. Although normally, a parent could exercise this authority, federal courts "have repeatedly affirmed a court's power to determine that the interests of a child or incompetent will be best represented by a 'next friend' or guardian ad litem and not by an authorized representative such as a parent or general guardian." *Ad Hoc Comm. of Concerned Teachers v. Greenburgh # 11 Union Free Sch. Dist.,* 873 F.2d 25, 30 (2d Cir.1989); *see also Hoffert v. General Motors Corp.,* 656 F.2d 161, 164 (5th Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982). Appointment of a guardian for an infant is justified when a parent "is unable, unwilling or refuses to act, or has *interests which conflict* with that of the infant." *Ad Hoc Comm. of Concerned Teachers,* 873 F.2d at 30 (emphasis added).

Evidently seeking to minimize the intrusiveness of the guardian's participation, Magistrate Judge Azrack limited the guardian's role to preparing the children for depositions and representing them at their depositions. Under this approach, the depositions would be the forum at which the facts relating to a conflict would be brought out. In my opinion, the better approach would be to separate the conflict determination from the substance of the litigation. The appointment by Magistrate Judge Azrack of a guardian who would have an opportunity to meet and speak with the children, together with appropriate assistance and inquiry from the Magistrate Judge, may address the concerns voiced by her without interfering with the parents' choice of counsel at the formal stages of a

case in which there may not be persuasive evidence of neglect or abuse.

Because it is not possible to foresee what the result of the foregoing procedure will be, it is neither necessary or appropriate to propose contingent courses of action that the Magistrate Judge may wish to follow. Nevertheless, I do not intend to suggest that she would be precluded from adhering to her original decision if the record provides a basis for concluding that the children should be separately represented at the deposition. Before such action is taken at the behest of the defendants, less intrusive measures should be pursued.

Accordingly, the order of the Magistrate Judge is modified with instructions to conduct further proceedings consistent with this opinion.

SO ORDERED.