**Jatin PATEL, Plaintiff–Appellee,**

**v.**

**Kevin SEARLES and Debra Swanson, Defendants–Appellants.**

**Docket No. 00–9552.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 12, 2001.

Decided: Sept. 30, 2002.

Scott M. Karsten, West Hartford, CT (Sack, Spector & Karsten, LLP, West Hartford, CT, of counsel), for Defendants–Appellants.

Jon L. Schoenhorn, Hartford, CT (Schoenhorn & Associates, Hartford, CT, of counsel), for Plaintiff–Appellee.

Before CARDAMONE, POOLER, and B.D. PARKER, Circuit Judges.

CARDAMONE, Circuit Judge.

This appeal deals with the constitutional right of intimate association. Although clearly recognized in a general way by the Supreme Court and in scholarly writings, all of its boundaries have not yet been fixed. We think it unnecessary for our purposes to attempt to fully remedy that lack. Like the wind that blows where it wills and can be heard, yet no one knows "from where it cometh and whither it goeth" John 3:8, this constitutional right is real despite the lack of exact knowledge regarding its derivation and contours.

Plaintiff Jatin Patel sued defendants Kevin Searles, Chief of Police for the Town of Windsor, Connecticut, and Debra Swanson, a detective for the same town, pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages for alleged violations of his constitutional right to intimate association. Plaintiff also asserted state common law causes of action and, in an amended complaint, a substantive due process claim of defamation under the Fourteenth Amendment. We have before us an interlocutory appeal from a decision and order of the United States District Court for the District of Connecticut (Underhill, J.), dated November 14, 2000, denying defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Patel v. Searles,* No. Civ.A. 3:99CV1230SRU, 2000 WL 1731338 (D.Conn. Nov.14, 2000). We have jurisdiction to hear this interlocutory appeal under the collateral order doctrine. *See Locurto v. Safir,* 264 F.3d 154, 162 (2d Cir.2001).

In moving for Rule 12(c) judgment on the pleadings, defendants contended that they are entitled to qualified immunity protecting them from suit on the constitutional claims Patel alleged and that no basis exists for the asserted supplemental state common law claims. In denying defendants' motion, the district court held that plaintiff had stated a cognizable claim for the violation of his constitutional right to intimate association, and that the state law claims were sufficient on their face. The court did not address plaintiff's defamation claim. Defendants do not challenge on appeal the trial court's ruling with regard to the common law claims. Since we affirm with respect to the alleged violations of plaintiff's right to intimate association, we need not reach the defamation issue, and leave it therefore for the district court to decide in the first instance.

## BACKGROUND

Because we are faced with a motion for judgment on the pleadings, we accept the

allegations in the amended complaint as true and construe them in the light most favorable to the plaintiff. *King v. Am. Airlines, Inc.*, 284 F.3d 352, 355 (2d Cir. 2002). Those allegations describe the circumstances in which this case arises as follows: on March 21, 1996 the plaintiff's mother and sister, Champa and Anita Patel, were found murdered in their home in the Town of Windsor, Connecticut. Under the direction of Chief Searles, Detective Swanson began investigating this crime. After two months of police work, Swanson had not uncovered sufficient evidence to arrest a suspect. Frustrated by the lack of progress, defendants allegedly focused the criminal inquiry on plaintiff by concocting and disseminating false evidence about him. The officers' intention, according to Patel, was to create hostility and mistrust among the members of his family towards him with the hope that the resulting animosity would produce accusations against him.

Specifically, the complaint asserts that the officers began their scheme in April or May 1996 when one or both of them drafted fake confession letters blaming plaintiff's cousin for the deaths. They mailed the fake letters to two daily newspapers and to plaintiff's father, falsely claiming they came from plaintiff's typewriter. Further, a year later, the officers drafted and disseminated a memorandum that listed the reasons the police suspected plaintiff committed the murders. This memorandum, as summarized in the amended complaint, allegedly contained the following four falsehoods:

a. That a "rift" between the plaintiff and his deceased sister [Anita] was "so severe" that the plaintiff's niece (Anita's daughter) "would not recognize" him. This falsehood is significant because the plaintiff's niece was an eyewitness to the murders, who told investigators that she did not recognize the perpetrator;

b. That the plaintiff's "net worth plummeted from approximately $300,000 in 1995 to $32,000 in April 1996;"

c. That the plaintiff failed a polygraph test and then refused to take further tests;

d. That the defendant [plaintiff] "refused to grant further interviews to answer still open questions."

In November 1997, still without any real leads, Detective Swanson traveled to Tennessee, where Patel had moved as a result, he said, of the officers' actions. There she delivered a handwritten letter to, among others, plaintiff's wife. In the letter, Swanson again falsely accused Patel of the brutal torture and murder of his mother and sister, and further related that Patel was leading a double life—one that Seema, his wife, would likely be the last to know about. For this reason, Swanson stated, Seema and her children's lives were in danger, as Patel "could reach 'that point of anger again.' "

Patel declares that because of defendants' conduct he has been completely ostracized from the majority of his family and friends. For example, he states that his siblings and father refuse even to talk to him. Moreover, he contends these actions by defendants forced him to leave his former employment and home in Connecticut. In sum, plaintiff insists defendants Searles and Swanson acted dishonestly and recklessly, leading to the complete destruction of his family and community life.

## DISCUSSION

### I Standard of Review

We review the district court's denial of defendants' motion to dismiss on the pleadings *de novo, Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994), ac-

cepting the allegations in the amended complaint as true and drawing all reasonable inferences in favor of the nonmoving party, here the plaintiff. *D'Alessio v. N.Y. Stock Exch., Inc.,* 258 F.3d 93, 99 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 666, 151 L.Ed.2d 580 (2001). A complaint will only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, where the complaint alleges a civil rights violation, we apply this standard with particular strictness. *Sheppard,* 18 F.3d at 150.

## II Constitutional Right to Intimate Association

■ As stated, plaintiff avers defendants violated his constitutional right to intimate association and that they are thereby subject to liability under 42 U.S.C. § 1983. This civil rights law provides a cause of action to individuals who have been deprived by government officials acting under color of law "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001). Defendants respond that they are entitled to judgment on the basis of the affirmative defense of qualified immunity. This defense shields government actors from liability if they did not violate clearly established law, or if it was objectively reasonable for such actors to believe that their actions did not violate clearly established law. *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *see Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ We proceed in two steps. First, we address the threshold question of whether the amended complaint alleges the deprivation of an actual constitutional right. *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If it does, we then decide whether the right was clearly established at the time of the officers' alleged misdeeds. *Id.* " '[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 614–15, 119 S.Ct. 1692 (alterations in original).

### A. Recognition of Such Right

■ Defendants concede that the Constitution in at least some circumstances protects familial relationships from unwarranted government interference. This protection derives, in part, from a broader constitutional right to association. *See Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In *Roberts,* the Supreme Court addressed the right to association in two forms: freedom of expressive association and freedom of intimate association. With regard to the latter right, which is the one at issue in this case, the Supreme Court stated such a right is constitutionally protected "as a fundamental element of personal liberty." *Id.* at 618, 104 S.Ct. 3244. For this proposition it cited a number of substantive due process cases, and noted its long tradition of affording "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Id.* at 618–19, 104 S.Ct. 3244; *see also Wilkinson ex rel. Wilkinson v. Russell,* 182 F.3d 89, 103 (2d Cir.1999) (" 'parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection'." (alteration in original)); Kenneth L. Karst, *The Freedom of Intimate Association,* 89 Yale L.J. 624 (1980) (providing the

first discussion of a right to intimate association).

## B. *The Family Relationship Alleged*

Since defendants concede a right to intimate association exists, the questions before us are whether the particular relationships at issue in this case are generally protected and, if so, whether they are protected under the circumstances alleged. With regard to the first question, defendants assert that Patel's amended complaint, which alleges that his relationships with his family and friends were impaired, implicates remarkably broad associational interests insupportable as federal claims under existing case law. Insofar as defendants complain that the right to intimate association does not protect relationships between friends, we note that the district court concluded that plaintiff's papers had made clear he was only pursuing claims based upon his *familial* relations. *Patel*, 2000 WL 1731338, at *1 n. 3. Thus, it is unnecessary to decide whether the right to intimate association extends to friendships as that question is not now before us.

■ Defendants also urge that plaintiff's complaint is too broad because it implicates all of the "various members of [his] family." *Roberts*, defendants assert, stated that relationships between members of a nuclear family deserve the most protection but that other relationships may not. *See* 468 U.S. at 618–20, 104 S.Ct. 3244. To determine whether other familial relationships are protected, one must, according to this formulation, assess such factors as cohabitation and the precise degree of kinship. We agree that *Roberts* established a sliding scale for determining the amount of constitutional protection an association deserves, but we conclude that the relationships at issue in this case— those between Patel and his father, siblings, wife, and children—receive the greatest degree of protection because they are among the most intimate of relationships.

We say this because at this stage of the litigation all reasonable inferences must be drawn in favor of plaintiff's complaint. The husband/wife and parent/child relationships are obviously among the most intimate, and defendants do not suggest otherwise. Moreover, even though plaintiff did not live with his father and siblings, we must assume those relationships, too, were of such an intimate nature as to warrant the highest level of constitutional protection. *See Rivera v. Marcus*, 696 F.2d 1016, 1024–25 (2d Cir.1982) (concluding that due process rights of half sister were violated when siblings were removed from her home).

## III Defendants' Arguments Regarding Their Conduct

### A. *Relationships' Impairment and Severity Questioned*

■ Although defendants concede plaintiff's right to intimate association exists, they maintain that plaintiff has not alleged his relations with his wife and children have been impaired by their conduct. To the contrary, the amended complaint makes several allegations specifically addressing those relationships. For instance, plaintiff alleges that Detective Swanson gave his wife false and defamatory information about him to make her fear for her own and her children's lives. According to Patel, this constituted part of the officers' strategy of creating sufficient hostility within his family in order to elicit false accusations against him. These allegations are sufficient to implicate plaintiff's right to intimate association. *See Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir.1999) (employee allegedly fired in retaliation for wife's discrimination suit could maintain § 1983 action); *Griffin v. Strong*, 983 F.2d

1544, 1549 & n. 5 (10th Cir.1993) (police officer's lie to suspect's wife that her husband had confessed to child abuse implicated wife's associational rights).

■ Defendants next contend that the extent of the alleged interference with plaintiff's relationships, which they assert only resulted in ostracization, was not severe enough to warrant constitutional protection. Citing cases where plaintiffs have been completely or permanently deprived of their intimate relations, the officers insist that there is a minimum level of culpability to which their conduct does not rise. *See, e.g., Bell v. City of Milwaukee,* 746 F.2d 1205, 1244–45 (7th Cir.1984) (holding parent's § 1983 claim actionable when adult son killed); *Duchesne v. Sugarman,* 566 F.2d 817, 833 (2d Cir.1977) (holding mother and children had actionable claim when state removed children from home and refused to return them without due process of law).

We reject defendants' draconian and formalistic vision of how severe the impairment to the right to intimate association must be because, for one thing, it is not supported by the case law. Simply put, defendants' view is inconsistent with *Roberts'* statement that constitutional protections for associational interests are at their apogee when close family relationships are at issue. 468 U.S. at 619–20, 104 S.Ct. 3244. Further, even less severe burdens than Patel has allegedly suffered have been held to implicate the right to intimate association. *See Adler,* 185 F.3d at 44 (holding that retaliatory dismissal is a sufficient burden on marital relationship to maintain § 1983 action).

■ And, even if plaintiff were required to show a permanent deprivation of familial association, the district court properly ruled that plaintiff alleged facts sufficient to establish such a claim with regard to his father and siblings. Specifically, plaintiff alleged that defendants "extinguish[ed]" his familial relations. In this respect, plaintiff suggests the officers used their authority to interfere with his family relations in a particularly pernicious way: they attacked the relationships directly rather than simply erecting a legal barrier, such as a custody determination, to prevent contact between plaintiff and his family members. Given these considerations, defendants' argument that plaintiff's injuries were insufficient to implicate the right to intimate association is unpersuasive.

### B. *Officers' Intent*

■ The officers' next argument—that there was no constitutional violation because the officers' actions were not "directed at" Patel's family relationships—fares no better. First, this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association. *See id.* at 43–44. But, in any event, Patel has alleged facts sufficient to prove that the officers' conduct *was* intentionally directed at his family. For instance, Patel declares that the officers engaged in a misinformation campaign designed "to create hostility and mistrust among family members that would ultimately lead to false accusations against [Patel]." That is to say, in order to falsely implicate Patel as a murderer, the officers directly assaulted Patel's intimate family relations through lies and chicanery. Hence, even under the strict standard suggested by defendants—which we do not believe finds support in *Roberts* or in any of our precedents—plaintiff has alleged a constitutional violation.

### C. *Governmental Interests*

■ Defendants next declare that Patel's right to intimate association is outweighed by legitimate governmental inter-

ests, namely, the investigatory necessities of a double homicide. With little or no physical evidence to aid their investigation, the officers warrant that they had a compelling and indisputably legitimate governmental interest in disrupting Patel's relations with his family.

In staking out this position, the officers rely heavily on *Griffin v. Strong*, 983 F.2d 1544 (10th Cir.1993). In *Griffin*, a police officer who was investigating charges of child abuse falsely told a woman that her husband had confessed to the crime. *Id.* at 1548. To determine whether the lie constituted an impermissible infringement on the plaintiff's right to familial intimacy, the court used a balancing test. On the one hand, both the plaintiff and her husband had willingly spoken to the officer, and the officer's conduct involved neither physical coercion nor behavior that shocked the conscience. *Id.* at 1548–49. But on the other hand, the officer lied about the plaintiff's *husband*, which the court believed "weigh[ed] on the side of an infringement of [her] associational rights." *Id.* at 1549 n. 5. In the end, the court concluded that the balance tipped in favor of the officer, since the alleged infringement, taken in context, was only a "slight" one. *Id.* at 1549.

Insofar as it is appropriate to weigh the strength of plaintiff's associational rights against the defendants' behavior in the instant case, we think defendants are correct that the government's interest in solving the murders weighs in their favor. However, this particular proposition at this stage of the proceedings is ultimately of little value. Construing the facts in the light most favorable to plaintiff, there are few if any other facts that weigh on the side of defendants. There is only the bare assertion that the officers were conducting a murder investigation. We do not now know if their alleged attempts to destroy Patel's family were anything more than a fishing expedition; that is, they may have gone after Patel for no reason other than his relationship to the victims.

Further, even were we to adopt the balancing test used in *Griffin*, all of the factors that supported the defendant's position in that case would favor Patel at this early stage of the litigation. For example, Patel alleges that the impact of the lies on his family was devastating, not slight. While in *Griffin* the officer told a lie to the plaintiff in one consensual interview, the officers in this case engaged in a virtual campaign of misinformation. Not only did they lie to Patel's father, wife, and siblings, but they also published those falsehoods in local newspapers. Moreover, when Patel moved from Connecticut to Tennessee, Swanson followed him and allegedly continued these tactics.

Additionally, in the present case, defendants told members of Patel's family that he could kill them, and lied about the evidence linking Patel to the murders of his mother and sister. We believe therefore that the officers' conduct here is of a wholly different degree than the police conduct in *Griffin*. Accordingly, Patel's amended complaint adequately alleges a violation of his right to intimate association.

### IV Qualified Immunity

Finally, we consider whether defendants are entitled to the protection of qualified immunity. That defense would come into play if, at the time of the alleged misconduct, defendants were not acting in violation of clearly established law. *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692. The defense applies if reasonable officials would not have understood that their actions, in the instant circumstances, violated plaintiff's right to intimate association. *See Anderson*, 483 U.S. at 640, 107 S.Ct.

3034. Thus, for a court to withhold qualified immunity, the unlawfulness of the action must have been apparent in light of pre-existing law. *Id.*

We agree with the district court that at least the general right to intimate association has been clearly established since 1984 when *Roberts* was decided. *Patel,* 2000 WL 1731338, at *3. As noted, *Roberts* stated that the affiliations that "attend the creation and sustenance of a family" exemplify those personal attachments deserving the greatest degree of sanctuary from the state. 468 U.S. at 619, 104 S.Ct. 3244. While the clearest instance of the right to familial association is embodied in the decades worth of authority protecting parents' custodial rights, *see Wilkinson,* 182 F.3d at 103–04, courts have not held, and defendants do not argue, that the constitutional protection for such relationships end when a child turns 18, *see, e.g., Bell,* 746 F.2d at 1245 ("[W]e are unpersuaded that a constitutional line based solely on the age of the child should be drawn. The Supreme Court's decisions protect more than the custody dimension of the parent-child relationship."); *see also Rivera,* 696 F.2d at 1025, 1028–29 (finding due process rights of a half sister were violated when siblings were removed from her home). Because *Roberts* explicitly stated that constitutional protection extended to the most intimate relationships, and because we assume on this appeal that plaintiff's relationships were intimate family relationships, we hold that the relationships at issue implicate the clearly established right to intimate association.

 Having found that the right to intimate association extended to Patel's family relationships, we must still determine, in this specific factual context, whether defendants' actions violated a clearly established "constitutional right[ ] *of which a reasonable person would have*

*known." Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (emphasis added). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendants' actions." *Ford v. Moore,* 237 F.3d 156, 162 (2d Cir. 2001). In this regard, defendants point out that even in the more common fact pattern of a child abuse investigation, our precedents have not delineated the exact boundaries of associational rights, making it difficult for social workers to know when their actions are unconstitutional. *See Wilkinson,* 182 F.3d at 104 n. 8. Similarly, since neither the Supreme Court nor this Court has ever ruled upon a fact pattern similar to the one now before us, the officers maintain that they, like the social workers in *Wilkinson,* had no reasonable basis to conclude that their alleged actions violated the Constitution.

Defendants' contentions are not without merit. Yet, at the pleading stage of this litigation, we are unable to conclude that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Plaintiff has alleged sufficiently serious misconduct that were we to reverse the district court, it would be equivalent to holding that the right to intimate association does not impose any clearly established limits on the tactics that a police officer may use in the course of an investigation.

While we earlier acknowledged uncertainty as to the contours of the right in question, *Adler,* 185 F.3d at 42, a subject the district court will need to consider, that uncertainty does not extend so far as to suggest that a murder investigation erodes all of the "critical buffers between the individual and the power of the State." *Roberts,* 468 U.S. at 619, 104 S.Ct. 3244.

Embracing that view would render hollow the right to intimate association.

As a consequence, we do not think it would be objectively reasonable for the police to engage in an extended public and private defamatory misinformation campaign to destroy a family, hoping that those tactics *might* produce incriminating leads in a murder investigation. *See Wilkinson,* 182 F.3d at 104 (noting that courts have declined to impose restrictions on abuse investigations short of the extreme of manufacturing false evidence); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 125 (2d Cir.1997) ("Lying is wrong, and if the police lie while acting in their official capacity, they ... violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny lest [we appear] to endorse such official misconduct, which would weaken the public's respect for the administration of justice."). In so holding, we do not set out an evidentiary threshold that plaintiff must reach to prevail on his § 1983 claim.

## CONCLUSION

Accordingly, we hold plaintiff has alleged facts sufficient to establish a constitutional violation of his right to intimate association. Further, that right was clearly established at the time of defendants' alleged conduct. The judgment of the district court is affirmed.