R. HOLLENBECK, A. Hollenbeck, T. Hollenbeck, C. Hollenbeck, O. Hollenbeck and D. Hollenbeck, infants, by their parents Sophie and Kevin Hollenbeck, and Sophie Hollenbeck and Kevin Hollenbeck, individually, Plaintiffs,

v.

Mildred BOIVERT, Isolene Holder, Eric Sanford, Michelle McNeil, N. Lael Telfeyan, Barbara Alexander, "John" Alicea, Nicholas Scoppetta, John Does 1–4, Howard Safir, City of New York Defendants.

No. 00 Civ. 9395(GBH).

United States District Court, S.D. New York.

July 28, 2004.

Carolyn A. Kubitschek, Lansner & Kubitschek, New York City, for plaintiff.

*MEMORANDUM OPINION & ORDER*

DANIELS, District Judge.

Parents and their children sued New York City as well as officers and employees of the New York City Administration for Children's Services ("ACS"), alleging that ACS's removal of their children from their custody violated their rights and their children's rights under the Fourth and Fourteenth Amendments and under

New York State law.[1] Defendants move to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons stated below, defendants motion is denied except to the extent that plaintiff's complaint can be read to allege a substantive due process claim under the Fourteenth Amendment. That claim is dismissed.

## I. *Background*

Plaintiffs Kevin and Sophie Hollenbeck, individually and on behalf of their children, bring suit challenging the removal of their children from their custody.[2] On September 14, 1999, ACS removed the children from the Hollenbeck's custody after allegations of child abuse and neglect were made against their father, Kevin Hollenbeck. The incident which sparked the removal process began on September 13, 1999, when Kevin Hollenbeck brought his son, infant plaintiff T. Hollenbeck, to the dentist for a dislodged tooth. The Hollenbecks allege that the tooth became dislodged when the son "threw himself down, landing on top of" his brother. Amended Complaint at 4, ¶ 24. The dentist who treated the son suspected abuse and contacted the New York State Central Register of Abuse and Maltreatment ("Central Register"). The Central Register, in turn, notified ACS, who initiated an investigation.

The Hollenbecks allege that on September 14, 1999, an ACS supervisor visited the Hollenbeck home, interviewed the family members and determined that the son's injury was caused by an accident. Plaintiffs claim that the supervisor then left their home, only to return later in the day to remove the children. Plaintiffs allege that the supervisor, after conducting his initial investigation, returned to ACS only to be ordered to remove the children from their parents' custody. Plaintiffs argue that by removing the children without a court order, ACS violated their constitutional rights.

■ ACS claims that the incident involving the son was not the first time they had cause to visit the Hollenbeck home. In their initial complaint, plaintiffs allege that a fight occurred on May 9, 1999 between Kevin Hollenbeck and his older son who is not a plaintiff in this action. That older son informed a school counselor who reported the incident to the Central Register. ACS was soon notified and they commenced proceedings against Kevin Hollenbeck in Family Court on July 1, 1999, alleging that he had neglected all of his children.[3] ACS and Kevin Hollenbeck

1. Plaintiffs assert their claims pursuant to 42 U.S.C. § 1983 ("1983").

2. Plaintiffs Kevin and Sophie Hollenbeck are the parents of six infant plaintiffs. Plaintiffs have a seventh son who is not a party to this litigation.

3. Subsequent to defendants' filing of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), plaintiffs filed an amended complaint that removed all previous references to the May 9, 1999 incident. Defendants argue that this amended complaint is improper under Fed. R.Civ.P. 15(a), which permits a party to amend their "pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." It is uncontested that plaintiffs neither sought leave of court nor received written consent of their adversary before they filed their amended complaint. However, in the Second Circuit, a motion to dismiss is not a responsive pleading under Fed.R.Civ.P. 15(a). *See Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 448 n. 1 (2d Cir. 1978). Plaintiffs, therefore, did not violate Rule 15(a) in filing their amended complaint. The Court, therefore, will consider defendants' motion to dismiss as addressed to the amended complaint rather than the original complaint. *See Marczeski v. Brown*, 2002 WL 31682175, *1 (D.Conn.2002)(finding that defendants are not prejudiced by considering their motion to dismiss an initial complaint as a motion to dismiss an amended complaint where the defendants addressed the amended complaint in their reply papers).

eventually entered into a written stipulation of facts that outlined the May 9, 1999 incident. Specifically, the stipulation described the events leading up to the fight, discussed the older son's actions and concluded with Kevin Hollenbeck admitting to striking his son in the face and kicking him in the groin. The stipulation further outlined the older son's physical condition after the fight and concluded that he "did not suffer an impairment of his physical, mental or emotional condition as a result of the incident." *In the Matter of the Hollenbeck Children,* N–7316/99, (N.Y.Fam.Ct., May 12, 2000), Reply Declaration of Assistant Corporation Counsel Donald C. Sullivan, Exhibit D, p. 2. The Family Court, while accepting the stipulation, rejected this final conclusion, finding that "[t]he conclusory statement [discussing the older son's condition] is belied by the preceding sentence" which stated that he "had a mark on his cheek which was reddish in color, some swelling and some impression of teeth marks on the inside of the child's cheek." *Id.* The Family Court found that Kevin Hollenbeck "unreasonably inflicted excessive corporal punishment on the child" and entered a finding of neglect. *Id.* at 4. The Family Court, however, suspended judgment "given the fact that ACS has withdrawn the petition against respondent mother, the representation by all counsel that the respondent father has fully complied with ACS supervision since the inception of the case, and on the agreement of all the parties...." Plaintiff appealed these findings.[4] The

children were not removed from the Hollenbeck home, however, until September 14, 1999, after the second reported incident.

On September 16, 1999, ACS added Sophie Hollenbeck to the complaint and commenced child abuse and neglect proceedings against both parents in Family Court. Plaintiffs claim that ACS maliciously filed these false charges "for the purpose of attempting to ratify their prior unconstitutional removal and detention of infant plaintiffs." *Id.* at 6, ¶¶ 38–39. On September 17, 1999, plaintiffs filed a written demand in Family Court for the return of their children. The Court held hearings on September 17, 21, 29, 1999 as well as October 4, 1999. On September 17, 1999, the Family Court ordered infant plaintiff C. Hollenbeck returned to the custody of Sophie Hollenbeck. The Family Court further ordered Kevin Hollenbeck to leave his home pending further investigation by the Court. On September 21, 1999, the Family Court ordered the return of the remaining Hollenbeck children to Sophie. The Family Court again ordered that Kevin Hollenbeck remain away from the Hollenbeck home. On October 4, 1999, the Family Court allowed Kevin Hollenbeck to return home. *Id.* at 6, ¶ 44. Plaintiffs have had custody of their children since October 4, 1999. On April 24, 2000, ACS withdrew all charges against Sophie Hollenbeck as well as all charges against Kevin Hollenbeck stemming from the September 13, 1999 incident.

---

4. Plaintiffs' counsel has subsequently submitted a letter from the Office of the Corporation Counsel. The June 20, 2001 letter, addressed to the Supreme Court of the State of New York Appellate Division, states that in an order dated July 27, 2000, the Family Court set forth the terms of the suspended judgment and incorporated a stipulation entered into between Kevin Hollenbeck and ACS. The stipulation provided that the May 12, 2000 order finding that Mr. Hollenbeck had unreasonably inflicted excessive corporal punishment on his son would be vacated and the petition against Mr. Hollenbeck dismissed if he complied with the stipulation's terms. The letter further states that Mr. Hollenbeck "has cooperated with the ACS service plan and the Commissioner [of ACS] has not moved to vacate or modify the suspended judgment. Thus, the fact-finding determination is deemed vacated and the petition is dismissed."

Plaintiffs allege eight causes of action. In their first cause of action, plaintiffs allege that the removal and detention of infant plaintiffs was "without probable cause and without due process," in violation of the parents' Fourth and Fourteenth Amendment rights. Plaintiffs next allege that the removal of the infant plaintiffs was "without probable cause and based upon a constitutionally inadequate investigations of child abuse and neglect charges" in violation of all of the plaintiffs' Fourth and Fourteenth Amendment rights. Plaintiffs' third cause of action alleges that the defendants' policy of "removing and detaining children from their parents without probable cause, without due process of law, and based upon constitutionally inadequate investigations of child abuse and neglect charges" violated the children's interest in "being free of unlawful seizures" in violation of the Fourth and Fourteenth Amendments. Plaintiffs also allege that the defendants maliciously filed child protective proceedings against them in violation of the Fourth and Fourteenth Amendments.[5] Plaintiffs further allege violations of New York State Law, specifically charging malicious prosecution, unlawful interference with the parents' custody rights, unlawful imprisonment of the children and breach of duty of care.

Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that plaintiffs' claims are barred under the *Rooker–Feldman* and *Younger* abstention doctrines and that plaintiffs cannot prevail on their due process claims. Defendants also allege that all claims against the individual defendants should be dismissed under the doctrine of qualified immunity. Lastly, defendants request that plaintiffs' counsel be disqualified from representing both the parents and the Hollenbeck children, arguing that such representation creates an inherent conflict of interest.

## II. *Discussion*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint where the complaint "fail[s] ... to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss, this Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *See Patel v. Searles,* 305 F.3d 130, 134–35 (2d Cir. 2002). Here, a motion to dismiss will only be granted if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir. 1992). A court may look at the complaint and any documents attached to, or incorporated by reference in, the complaint. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999).

### A. *The Rooker–Feldman Doctrine*

Defendants contend that plaintiffs' claims must be dismissed under the *Rooker–Feldman* doctrine because they are based on determinations and findings previously adjudicated in the Family Court. Plaintiffs dispute this argument, asserting that they "do not seek to overturn an order of the Family Court." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and for Summary Judgment ("Plaintiffs' Brief") at 8. Plaintiffs assert that the

> issues that [they] present here are the issues upon which plaintiffs prevailed in the Family Court: 1) the legality of the removal of the six infant plaintiffs from the custody of their parents; and 2) the legality of defendants' commencing and continuing child abuse charges against Kevin Hollenbeck and Sophie Hollenbeck.

---

**5.** All of plaintiffs' constitutional claims are brought pursuant to § 1983.

Plaintiffs' Brief at 9. During oral argument, plaintiffs' counsel stated that the "basis of the complaint is that children were removed without probable cause and without due process of law and were separated from both of their parents from September 14 until October 4. And secondly, that Ms. Hollenbeck was prosecuted maliciously in violation [of] the United States Constitution and State Tort Law." Transcript dated April 18, 2001 at 61.

"A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996). The doctrine "holds that inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir.2002). In *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the United States Supreme Court articulated that the jurisdiction of the district courts is strictly original and no federal court, other than the Supreme Court, can consider a claim to reverse or modify a state court judgment. The Court further explained, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) that to the extent that a plaintiff's claims before the district court were "inextricably intertwined" with the state court's findings, the district court did not have jurisdiction to entertain the claims.

The Second Circuit has found that the *Rooker–Feldman* doctrine will bar an action raising the "precise claims raised in a state court proceeding," but will not bar claims that "were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings." *Moccio*, 95 F.3d at 198–199. "[I]nextricably intertwined means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Id.* at 199–200 (internal citations and quotations omitted). Courts must therefore determine whether the principles of res judicata or collateral estoppel would preclude a plaintiff from raising a previously litigated claim in subsequent proceedings. *See Phifer v. City of New York*, 289 F.3d 49, 56 (2d Cir.2002)(finding that in challenges to subject matter jurisdiction under *Rooker–Feldman* doctrine, court must consider two categories of preclusion: res judicata and collateral estoppel). The Second Circuit further held that

> while res judicata does not bar the plaintiff's section 1983 claims in the instant case as the family court does not have the power to award monetary damages, collateral estoppel can be applied to the plaintiff's section 1983 claims to determine whether they are barred under *Rooker–Feldman.*

*Id.; see also People United for Children, Inc. v. City of New York*, 108 F.Supp.2d 275, 287 (S.D.N.Y.2000). Under New York law, collateral estoppel will apply only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Phifer*, 289 F.3d at 56 (citing *Moccio*, 95 F.3d at 200).

There is nothing in this record to show that the Family Court made a determination regarding the propriety or impropriety of ACS's actions. There is no clear finding by the Family Court that ACS either lacked a reasonable basis for remov-

ing the children or that their removal was justified by the existence of exigent circumstances. The record before this Court, therefore, does not show that the issues presented by the plaintiffs in this case were actually and necessarily decided in a prior proceeding. The record is similarly devoid of facts or allegations to show that plaintiffs had a full and fair opportunity to litigate these issues in the Family Court. Defendants argue that the following quote from plaintiff Kevin Hollenbeck's counsel's summation to the Family Court supports their contention that plaintiffs already presented these issues:

> This whole thing has been blown out of proportion.... Someone up in the bureaucracy of ACS whose (sic) never seen anybody in this family decided they are going to make a decision in this case.

Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Brief") at 8 (quoting Transcript of Family Court proceedings dated October 4, 1999). This quote is insufficient to show that plaintiffs had a full and fair opportunity to argue the issues they currently present. Based on this record, the claims presented by the plaintiffs are not inextricably intertwined with the proceedings, determinations and findings of the Family Court.[6] Defendants' motion to dismiss plaintiffs'

claims based on the *Rooker–Feldman* doctrine is therefore denied.[7]

### B. Plaintiff's § 1983 Claims

In order to be entitled to relief under § 1983, a plaintiff must allege: (i) a violation of a Constitutional right and (ii) must show that the alleged deprivation was committed by a person "acting under the color of state law." *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Plaintiffs assert violations of their Fourteenth and Fourth Amendment rights under § 1983.

#### a. Plaintiffs' Fourteenth Amendment Claims

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The gravamen of plaintiffs' Fourteenth Amendment claims are based on: the removal of the Hollenbeck children from their parents' custody without probable cause and without due process of law; and the commencement of child abuse and neglect proceedings against the Kevin and Sophie Hollenbeck. Plaintiffs allege that ACS did not have probable cause to remove the

---

**6.** The cases cited by both parties that support a finding that the *Rooker–Feldman* doctrine barred the consideration of a plaintiff's Fourth Amendment and Fourteenth Amendment claims, show that the Family Court previously made findings supporting ACS on the issues of "imminent danger," "reasonable basis," and "exigent circumstances" and had already ruled on the issues of removal and neglect. *See Phifer*, 289 F.3d at 60; *see also Park*, 2003 WL 133232 at *9–10. In the present case, the record does not show that these issues were previously adjudicated in the Family Court.

**7.** Defendants also argue that the *Younger* abstention doctrine bars this Court from hearing

plaintiffs' non-monetary claims. Under the *Younger* abstention doctrine, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186. The application of the *Younger* doctrine, however, is inappropriate where the litigant seeks money damages for an alleged violation of § 1983. *See Rivers v. McLeod*, 252 F.3d 99 (2d Cir.2001). Defendants motion to dismiss plaintiffs claims based on the *Younger* doctrine is also denied.

children from their parent's custody absent a pre-deprivation hearing in violation of their due process rights under the Fourteenth Amendment.[8]

### 1. *Procedural Due Process*

■ In reviewing procedural due process claims, courts must first determine whether a person has been deprived of a protected liberty interest. The court must then determine what, if any, constitutional process is due. Typically, this means that the person allegedly deprived of a liberty interest is given reasonable notice and an opportunity to be heard. The Second Circuit has found that parents possess a fundamental liberty interest in "the care, custody and management of their children." *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999). In the context of child removal proceedings, procedural due process prevents state actors from depriving a parent of the custody of his/her children without a pre-deprivation hearing unless the children are "immediately threatened with harm." In these cases, parents must be provided with a prompt post-deprivation hearing. *Tenenbaum,* 193 F.3d at 594. During such "emergency circumstances," a "child may be taken into custody by a responsible State official without court authorization or parental consent." *Id.*

■ Emergency circumstances are those in which "the child is immediately threatened with harm, for example, where there exists an immediate threat to the safety of the child, or where the child is left bereft of care and supervision, or where there is evidence of serious ongoing abuse and the officials have reason to fear imminent recurrence." *Hurlman v. Rice,* 927 F.2d 74, 81 (2d Cir.1991). However, "[i]f the danger to the child is not

so imminent that there is reasonably sufficient time to seek prior judicial authorization, *ex parte* or otherwise, for the child's removal, then the circumstances are not emergent." *Nicholson v. Scoppetta,* 344 F.3d 154, 171 (2d Cir.2003)(quoting *Tenenbaum,* 193 F.3d at 594)(internal quotations omitted). Furthermore, the government must offer objectively reasonable evidence that harm is imminent. *Nicholson* 344 F.3d at 171 (citing *Gottlieb v. County of Orange,* 84 F.3d 511, 520 (2d Cir.1996)).

■ In order to state a procedural due process claim, therefore, plaintiffs must allege that the children were removed without parental permission and without Court authorization. Plaintiffs must further allege that the removal was not conducted under emergency circumstances. Plaintiffs' complaint sufficiently alleges that ACS's removal of the Hollenbeck children was not conducted under emergency circumstances.[9] Plaintiffs' allegations, which are to be taken as true for the purposes of this motion, show that after being notified of suspected abuse and/or neglect by Tyler's dentist, ACS dispatched an investigator to meet with and interview the family. After interviewing Mr. and Mrs. Hollenbeck as well as the infant plaintiff T. Hollenbeck, the ACS investigator allegedly "determined that [T. Hollenbeck's] injuries were caused by an accident, and not by child abuse or neglect." Amended Complaint at 5, ¶ 31. Subsequent to the determination by the investigator, the amended complaint alleges that the investigator's supervisors ordered the children's removal. The amended complaint shows a lag of time between the end of the investigator's interview and the removal of the children.

---

**8.** Plaintiffs have not specified whether their due process claims allege substantive due process or procedural due process violations.

**9.** Plaintiffs allege and defendants do not contest that ACS's removal of the children from their home was conducted without court authorization or parental consent.

Whether there was enough time to seek prior judicial authorization, *ex parte* or otherwise, is unclear from plaintiffs' allegations. However, the allegations do show that the investigator, at the end of his visit, did not order the *immediate* removal of the children. Rather, he discussed the situation with his supervisors, who subsequently ordered the children's removal. These are sufficient allegations that the removal of the Hollenbeck children on September 14, 1999 was not conducted under emergency circumstances. Defendants' motion to dismiss plaintiffs' Fourteenth Amendment procedural due process claims is therefore denied.

### 2. *Substantive Due Process*

■ Substantive due process "protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995). "The touchstone of due process is protection of the individual against arbitrary action of government. Substantive due-process rights guard against government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Tenenbaum,* 193 F.3d at 600 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998))(internal quotations omitted).

■ In order to state a substantive due process claim, plaintiffs must allege that they were deprived of a protected liberty interest by government action. Indeed, parents possess a right to custody of their children. *See Park v. City of New York,* 2003 WL 133232 (S.D.N.Y.2003)(citing *Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir.2000)). Parents and their children have, "in general terms, a substantive right under the Due Process Clause to

remain together without the coercive interference of the awesome power of the state." *Tenenbaum,* 193 F.3d at 600 (citing *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977))(internal quotations omitted).

■ The Second Circuit has found, however, that parents' and children's substantive due process rights are not violated when the separation is temporary and conducted to investigate allegations of child abuse. "[B]rief removals generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Nicholson,* 344 F.3d at 172 (citing *Tenenbaum,* 193 F.3d at 600–601 n. 12). As we have explained, the *ex parte* removal process is designed to safeguard the child until a court hearing is practicable, and judicial confirmation must be obtained "forthwith." *Id.* Furthermore, custody transfer for this reason "does not result in parents' wholesale relinquishment of their right to rear their children." *Joyner v. Dumpson,* 712 F.2d 770 (2d Cir.1983).

Plaintiffs' complaint alleges that a post-deprivation hearing was conducted on September 17, 21, 29 and October 4, 1999 resulting in the return of the children to Sophie Hollenbeck and the return of Kevin Hollenbeck to the Hollenbeck home. This temporary separation, done for the purpose of ensuring the safety of the children, does not rise to the level of an arbitrary or egregious act of government. Indeed, the prompt post-deprivation hearings, which concluded with the return of all the children to their mother shows that no substantive due process rights were violated. *See Tenenbaum,* 193 F.3d 581 (finding that "[t]here is no basis for us to hold that a temporary separation of [the child] from her parents in an effort to obtain assur-

ance that she had not been abused would have been so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it"). To the extent that plaintiffs allege a substantive due process claim under the Fourteenth Amendment, that claim is dismissed.

### b. Plaintiffs' Fourth Amendment Claims

 Plaintiffs also allege that the defendants removal of the children without probable cause constitutes an unlawful search and seizure in violation of the Fourth Amendment.[10] "[T]he Fourth Amendment applies in the context of the seizure of a child by a government agency official during a civil child-abuse or maltreatment investigation." *Nicholson*, 344 F.3d at 172 (citing *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir.2000)). "The warrantless seizure of a child by government officials pursuant to a child abuse or neglect proceeding is reasonable if it is justified by 'exigent circumstances.'" *Park*, 2003 WL 133232 at *11 (citing *Phifer*, 289 F.3d at 61). Exigent circumstances exist if the state actors "have reason to believe that life or limb is in immediate jeopardy." *Phifer*, 289 F.3d at 61.

> As we observed in *Tenenbaum*, a warrantless arrest can usually be justified by the existence of probable cause to arrest arising at the time of the arresting officer's action. By analogy, then, we could conclude that there is no Fourth Amendment violation committed by ACS officials carrying out an *ex parte* removal where there was probable cause to believe that there existed facts to

merit emergency removal under New York law.

*Nicholson*, 344 F.3d at 172. Plaintiffs have sufficiently alleged that ACS lacked probable cause to remove the children from their custody. Furthermore, as this Court discussed *infra*, plaintiffs have sufficiently alleged that exigent circumstances did not exist at the time of their children's removal. Defendants' motion to dismiss the children plaintiffs' Fourth Amendment claims is denied.

### C. Qualified Immunity

 Defendants also move for dismissal under the theory of qualified immunity. "A government actor performing a discretionary task is entitled to immunity from § 1983 suits if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 250 (2d Cir.2001)(internal citations and quotations omitted). Defendants in the present case assert only the second argument, that the actions of the ACS caseworkers were objectively reasonable "under the circumstances known to the ACS employees at the time.... In addition, although not mentioned in the Complaint, ACS had a long history of involvement with this family, and the dentist's report was the fourth report of suspected abuse or neglect filed against this family with child protection authorities, a fact which was disclosed to the Family Court." Defendants' Brief at 11.

---

**10.** "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Tenenbaum*, 193 F.3d 581, 602, n. 13 (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). If plaintiff Kevin and Sophie Hollenbeck's Fourth Amendment claims are based on the removal and detention of their children,

therefore, they must be dismissed. A reasonable reading of plaintiffs' amended complaint does not uncover cognizable Fourth Amendment claims by Kevin and Sophie Hollenbeck. *See e.g.*, *Kia P.*, 235 F.3d at 758 ("[L]ike the parental plaintiffs in *Tenenbaum*, Kia P. does not have—or at least no longer alleges—cognizable Fourth Amendment claims based on her daughter's ... removal.").

In their reply brief, however, defendants "concede that it is an unusual case where the question of qualified immunity can be resolved on a motion to dismiss." Reply Brief at 7. Any evidence of other prior allegations of abuse or other facts upon which ACS relied as justification for the children's removal is presently not before this Court. Defendants' motion for dismissal under the theory of qualified immunity, therefore, is premature and is denied without prejudice.

## D. *Malicious Prosecution*

In their Fourth and Fifth Causes of Action, plaintiffs allege that the defendants "maliciously and without probable cause commenced child neglect proceedings against" Kevin and Sophie Hollenbeck in violation of the Fourth and Fourteenth Amendments and New York State law. Amended Complaint at 12, ¶ 84.[11] Although defendants did not address these claims in their opposition brief, they refer to these causes of action in their reply brief, arguing that these claims also fail under the *Rooker–Feldman* doctrine. As the Court has already determined that the *Rooker–Feldman* doctrine does not apply

to the issues before this Court, defendants motion to dismiss these claims is denied.[12]

## E. *Motion to Disqualify Attorney*

■ Defendants have also moved to disqualify plaintiffs' counsel, the law firm of Lansner & Kubitschek, from representing both the adult plaintiffs and the infant plaintiffs in the instant action.[13] The crux of defendants argument is that both parents were accused of neglecting their children thereby creating a conflict of interest in the present case. Plaintiffs argue that no conflict of interest exists in the representation of both the parents and the children by the Lansner & Kubitschek law firm.

This motion is similar, if not exactly the same as a letter application submitted by Corporation Counsel on behalf of New York City and ACS seeking to disqualify the same law firm in another child removal case.[14] In *Mercedes v. Blue*, 2001 WL 527477 (S.D.N.Y.2001), Magistrate Judge Dolinger found that the defendants made no showing of an actual or likely conflict of interest between the mother and her children and declined to order the attorneys' disqualification. "The competing consider-

---

11. Plaintiffs allegations stem from the July 1, 1999 and September 16, 1999 proceedings against Mr. Hollenbeck and the September 16, 1999 proceeding against Mrs. Hollenbeck.

12. In their Sixth and Seventh Causes of Action, plaintiffs allege two additional state claims for unlawful imprisonment and breach of duty of care. Defendants addressed neither cause of action in either their initial motion papers or their reply brief.

13. Defendants further argue that "[a]t a minimum, the Court should preclude dual representation of the infant plaintiff and the plaintiff Kevin Hollenbeck." Defendants' Brief at 14.

14. Defendants note several cases involving similar issues in which Corporation Counsel, on behalf of the City of New York, sought to

disqualify Lansner & Kubitschek from representing both the parents and the children in federal cases. *See Mercedes v. Blue*, 2001 WL 527477 (S.D.N.Y.2001)(declining to order disqualification of parent's counsel, Lansner & Kubitschek, because defendant New York City failed to make a showing of an actual or likely conflict of interest in representing both the mother and her children); *see also McDonald v. Hammons*, 936 F.Supp. 86 (E.D.N.Y.1996)(appointing a temporary guardian ad litem to investigate potential conflict of interest that may arise from parent's counsel, Lansner & Kubitschek, representing both the parents and the children); *see also Thomas v. New York City*, 814 F.Supp. 1139, 1154 (E.D.N.Y.1993)(denying defendant New York City's motion to disqualify parent's counsel, Kubitschek, from representing both the mother and her children in 42 U.S.C. § 1983 action against New York City).

ations that are to be weighed in the balance include the need, on the one hand, to maintain ethical standards in the legal profession and to avoid distortions in the substance and appearance at the trial, and, on the other, to protect the litigant's freedom to select counsel of his choice." *Id.* at *2 (citing *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 564–65 (2d Cir.1973)).

Similar to *Mercedes,* defendants in the present case assert in general terms that the parents and the children have at least potentially conflicting interests because the parents' interest lies in denying that they mistreated the children, whereas the children's interest might involve disclosing that the parents did mistreat them. Corporation Counsel in *Mercedes* sought, in the alternative, for the appointment of a guardian *ad litem* to interview the children and to determine whether any conflicts existed. In the present case, the children were assigned a Law Guardian in the Family Court. Furthermore, plaintiffs argue that "[o]n behalf of the Hollenbeck children, the law guardian zealously advocated for the reunification of the Hollenbeck family and for the dismissal of all charges against the Hollenbeck parents." Plaintiffs' Brief at 24.

Disqualification motions based on conflicts of interest places a heavy burden on the moving party to demonstrate that disqualification is appropriate. *See Evans v. Artek Systems Corp.,* 715 F.2d 788 (2d Cir.1983). This high standard required of the party seeking disqualification is necessary because disqualification motions " 'are often interposed for tactical reasons,' and . . . 'even when made in the best of faith . . . inevitably cause delay.' " *Mercedes* at *1 (citing *Evans,* 715 F.2d at 791–92). Defendants have not met this heavy burden. There is no specific evidence before this Court of a conflict. Furthermore, should any conflict arise, it is the responsibility of plaintiffs' counsel to come forward and inform the Court. Defendants motion to disqualify plaintiffs' counsel is denied.

### III. *Conclusion*

Defendants' motion to dismiss under the doctrine of *Rooker–Feldman* is denied. Defendants' motion to dismiss plaintiffs' Fourteenth Amendment claims is denied. The parents' Fourth Amendment claims are dismissed. Defendants' motion to dismiss under the theory of qualified immunity is denied. Defendants' motion to disqualify plaintiffs' attorney is denied.

SO ORDERED.