OPINION OF THE COURT
Bryanne Hamill, J.
Procedural History
On April 11, 2006 respondent Brian S. (hereinafter respondent father or respondent) filed a motion requesting that this court enter a dispositional order dismissing the neglect petition pursuant to Family Court Act § 1051 (c) or, in the alternative, suspending judgment of the neglect finding, pursuant to Family Court Act § 1053. The Administration for Children’s Services (hereinafter ACS), the law guardian for the children, and the respondent mother Vanessa C. (hereinafter the respondent mother) have filed opposition papers thereto.
The court proceedings began when the respondent father filed a petition in Kings County Family Court on January 19, 2005 seeking custody of the subject children, Steven S. and Janessa S. His petition alleges that he is the father of the children, and it would be in the best interests of the children to be in his custody because the children are suffering mysterious burns and accidents in the care of their mother. The respondent father requested sole custody of the children. The case was before the Honorable Emily Olshansky. Due to the child protective allegations in the petition, Judge Olshansky ordered an emergency investigation, pursuant to Family Court Act § 1034. The matter was adjourned to January 21, 2005.
On January 19, 2005, the respondent mother Vanessa C. filed a family offense petition in Kings County Family Court seeking an order of protection against the respondent father for herself and the subject children. Her petition alleges that the respondent father pushed and hit the respondent mother in her mouth with his elbow in the presence of the children. Her petition also alleges prior incidents of abuse, including that he has thrown things at her, and has choked her until she was gasping for air. She also alleged that he uses drugs, carries a knife and has access to guns. At the same time, the respondent mother also filed a petition for custody of the subject children, seeking sole *507 custody, alleging that the respondent has been physically abusive to her in the presence of the children. The matter was adjourned to January 21-, 2005.
On January 21, 2005, the court requested the presence of an ACS attorney. The ACS attorney informed the court that the caseworker who had conducted the investigation would be consulting with the ACS attorney the following day as to their findings and recommendations. The court then issued a temporary order of protection on the mother’s behalf and denied the respondent father’s request for visitation.
On January 25, 2005, ACS filed a neglect petition against the respondent mother, alleging inadequate supervision of both children, under docket number NN-01194-5/05. Upon consent of the parties, to protect the children pending the outcome of the proceedings, the children were paroled to the maternal grandmother under ACS supervision. On January 28, 2005, the maternal grandmother filed for custody of both children.
On February 1, 2005, ACS filed a neglect petition against the respondent, alleging that he neglected the children, based upon various acts of domestic violence against their mother in the children’s presence. The case was adjourned to April 8, 2005.*
On April 8, 2005, the respondent informed the court that he wished to withdraw his petition for custody, and requested a paternity test. Genetic testing was ordered by the court, upon the consent of all the parties.
On September 15, 2005, the respondent mother submitted to the jurisdiction of the court, pursuant to Family Court Act § 1051 (a), and a finding of neglect based upon inadequate guardianship was entered. The subject children were paroled to the maternal grandmother, with their mother living with them. On January 25, 2006, a disposition on consent as to the respondent mother’s case was agreed upon and entered, whereas the respondent mother was placed under ACS supervision for 12 months to comply with various appropriate services, with a final order of custody to the maternal grandmother.
On March 8, 2006, the respondent was produced in court, as he had been arrested in November 2005 for an unrelated charge. He submitted to the jurisdiction of the court, pursuant to Fam *508 ily Court Act § 1051 (a), and findings of neglect, based upon acts of domestic violence against the respondent mother, were entered. However, he failed to consent- to an order of filiation for both children, notwithstanding positive paternity results. After this court’s thorough allocution wherein the court found he neglected these children, he orally moved to dismiss the neglect petition, pursuant to Family Court Act § 1051 (c), claiming that this court’s aid was not necessary as a final order of custody was awarded to the maternal grandmother. This court denied the oral motion, with leave to renew in writing.
Analysis
Family Court Act § 1051 (c) provides that
“[i]f facts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it, the court shall dismiss the petition and shall state on the record the grounds for the dismissal.”
In Matter of Lewis T. (249 AD2d 646 [3d Dept 1998]), the Family Court dismissed a neglect petition against the subject children’s mother, pursuant to section 1051 (c), finding that the aid of the court was not required in light of a previous court order granting the children’s nonrespondent father sole legal custody. On appeal, the Third Department reversed the lower court and reinstated the petition finding that the custody order alone was “insufficient to protect the children.” (Id. at 647.) In so doing, the Court held that11 [n]otwithstanding Family Court’s laudable desire to avoid unnecessary proceedings, by dismissing the petition it was unable to consider any alternative or additional dispositional remedies which may be warranted in the children’s best interest that are not provided for under the prior custody order.” (249 AD2d at 647.)
Additionally, the Court in Lewis T. recognized that an adjudication of neglect itself serves to ensure the safety and well-being of subject children, stating: “Even if, upon a current assessment of the children’s conditions and needs, no ‘new’ remedies need be included in the dispositional order, the finding of neglect would at least remain intact against respondent, which might prove significant in potential future proceedings.” (249 AD2d at 647, citing Matter of James HH., 234 AD2d 783 [1996].)
The Third Department in Matter of Baby Girl W. (245 AD2d 830 [3d Dept 1997]) expressly recognized that dismissal may *509 not be appropriate when there are indications that some continuing supervision may be required or a respondent has failed to adequately admit responsibility. (See also Matter of Elysa QQ., 249 AD2d 857 [3d Dept 1998]; Matter of Brian TT., 246 AD2d 826 [3d Dept 1998].)
In the instant case, the respondent argues that the aid of the court is not required because he has no proven paternity rights to the children and a final order of custody has been awarded to their maternal grandmother. The respondent further argues that the court is not charged in this case with protecting the respondent mother from him, because she does not have the children in her care and custody and has a separate family offense petition against him for an order of protection.
ACS, the law guardian and the respondent mother oppose the motion, and argue that by dismissing the neglect petition against the respondent, this court would be precluded from entering orders against the respondent that are necessary to protect these young children. Furthermore, the law guardian asserts that the respondent father should not avoid liability for domestic violence just because he has severed his relationship with their mother.
The respondent consented to a finding of neglect, pursuant to Family Court Act § 1051 (a). As such, the respondent has not contested the facts underlying the basis of neglect — namely, that he has neglected these children by perpetrating acts of domestic violence against their mother in their presence. The significant research and case law demonstrates the potentially detrimental physical and emotional effects upon a child who witnesses domestic violence. Further, the respondent has failed to present any proof of cooperation with appropriate services, such as a domestic violence accountability program. In Matter of G. (91 Misc 2d 911 [Fam Ct, NY County 1977]), the court held that after a hearing there was no evidence in the record “to persuade this court that respondent or her children are presently or will in the future be in need of this court’s aid or assistance” and that the record revealed that the respondent had “a normal, healthy and affectionate parent-child relationship” and there was “no danger of present or future neglect.” (91 Misc 2d at 914.) No such record exists here.
While the respondent has not previously presented proof of paternity, he has held himself out to be the children’s father and has had significant contact with the children prior to these court proceedings. At his request and upon the consent of all *510 the parties, he has submitted to a paternity test which reveals more than a 99% probability that he is the biological father of both children.
By dismissing the petition because the respondent has not legally established paternity would set a precedent of permitting putative fathers to evade responsibility for neglect by simply failing to establish paternity. This clearly would undermine the purposes of the Family Court Act, and would not serve the best interests of children born out of wedlock.
Under the totality of the circumstances, this court finds it needs to hold a dispositional hearing, so as to enable this court to determine what dispositional orders, pursuant to section 1052 of the Family Court Act, serve the best interests of these children.
Although the maternal grandmother currently has an order of custody upon the consent of the parties, this placement clearly does not obviate the necessity for the court to retain jurisdiction to impose conditions on the respondent. (See Matter of Diana Y., 246 AD2d 340 [1st Dept 1998].) The respondent mother currently has unsupervised visits with the children and resides in the same house as the maternal grandmother, but there may likely come a time when the children will be returned to her care and custody, by virtue of changed circumstances.
Incidentally, this is not a case where the respondent has demonstrated that he has been rehabilitated, as in Matter of G. (supra), or wherein the facts and circumstances have so changed that the underlying basis for neglect has been eliminated, as in Matter of Hickey (124 Misc 2d 667 [Fam Ct, Suffolk County 1984]). In Matter of Hickey, the court found that its aid was not required concerning allegations of educational neglect because the subject child, who had attained the age of 16 years, was no longer subject to the compulsory education law. (Id.)
Moreover, this court holds that it lacks statutory authority to dismiss a petition, pursuant to section 1051 (c), after a fact-finding order of neglect has been entered. Section 1051 (c) is placed under the heading of “ [sustaining or dismissing petition.” (See generally Family Ct Act § 1051.) Although the Family Court can dismiss a neglect case because its aid is not required when there are facts sufficient to sustain a finding of neglect, section 1051 (c) presumes that the determination to dismiss is made in lieu of a finding of neglect by virtue of its specific placement within article 10. Further support is found in section 1051 (a), which provides:
*511 “If facts sufficient to sustain the petition are established in accord with part four of this article, or if all parties and the law guardian consent, the court shall, subject to the provisions of subdivision (c) of this section, enter an order finding that the child is an abused or neglected child” (Family Ct Act § 1051 [a] [emphasis added]).
Section 1051 (a), therefore, makes clear that a determination that the aid of the court is not necessary is made in place of a finding of neglect, not after a finding has been entered.
In the present case, respondent does not dispute that he neglected the children by virtue of domestic violence against their mother. In fact, notwithstanding the paternity issue, as a person legally responsible for the care of the children, he consented to this court entering the findings of neglect, pursuant to Family Court Act § 1051 (a). Although Family Court Act § 1051 (c) permits the court to dismiss a neglect petition even if there are facts sufficient to sustain a finding of neglect, this provision is inapplicable as a finding of neglect has been entered. For all the foregoing reasons, the respondent’s motion to dismiss the petition, pursuant to Family Court Act § 1051 (c), is hereby denied.
With respect to his alternative request to suspend judgment, Family Court Act § 1052 (a) provides that at the conclusion of a dispositional hearing, the court shall enter an order of disposition, which may include suspending judgment in accordance with section 1053. The Second Department in Matter of Jonathan M. (295 AD2d 513 [2d Dept 2002]) held that the Family Court erred in issuing the dispositional order without first holding a dispositional hearing. “Here, the failure to conduct a dispositional hearing limited the Family Court’s ability to make an informed judgment as to the dispositional remedy which would be in the best interests of the children” (id. at 514). Accordingly, this court defers such application until the conclusion of the dispositional hearing scheduled for today.

 The respondent mother’s family offense case was transferred to this court, wherein a temporary order of protection was issued on behalf of the respondent mother and subject children. The maternal grandmother’s custody petition was likewise transferred.