Matter of MN (2007 NY Slip Op 27215)

Matter of MN

2007 NY Slip Op 27215 [16 Misc 3d 499]

April 6, 2007

Ruhlmann, J.

Family Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 8, 2007

[*1]
In the Matter of MN and Others, Children Alleged to be Severely Abused and Neglected. JH et al., Respondents.
[*2]Family Court, Monroe County, April 6, 2007

APPEARANCES OF COUNSEL

Office of Conflict Defender (Rhian D. Jones of counsel), for MHS, respondent. Daniel M. DeLaus, Jr., County Attorney (Peter A. Essley of counsel), for petitioner. Legal Aid Society (Ira J. Needleman of counsel), Law Guardian.

OPINION OF THE COURT

Dandrea L. Ruhlmann, J.
This is a case of first impression addressing the dispositional alternative of a suspended judgment for a father who admittedly neglected his sons and stepsons by failing to recognize or prevent abuse that the boys suffered at the hands of his wife. By petition filed August 31, 2005, Monroe County Department of Health and Human Services (petitioner) alleged that MHS (respondent) abused and neglected his four sons MH, JH, CH and NH and his two stepsons and the biological sons of corespondent JH, MN and TW. Respondent consented to a neglect finding and, on July 26, 2006, the court proceeded with a contested dispositional hearing. Respondent requested that the court suspend judgment pursuant to Family Court Act § 1053—a [*3]dispositional alternative rarely employed by courts and never interpreted by case law.[FN1]

Both petitioner and the Law Guardian opposed a suspended judgment and argued for continued placement of the boys.
At the conclusion of the dispositional hearing, this court suspended judgment. The court continued the shared arrangement where the boys lived four days per week in the home of two of the boys' maternal grandparents, LC and LC (grandparents), and three days per week with respondent. The suspended judgment has since been reviewed five times and the children were legally returned to respondent with substantial visitation to the grandparents.[FN2]

This written decision supplements that oral ruling and further details the disposition's practical aspects as the court analyzes what has transpired since its issuance.

Statement of Facts

The facts that led to the consent neglect finding are not in dispute. Respondent married CC and had two sons, MH and JH. CC passed away suddenly. Sometime in 2002 respondent developed a relationship with corespondent and she moved with her two sons, MN and TW, from Arkansas to New York into the H household. Respondent and corespondent married and together had two more sons, CH and NH. Respondent is a truck driver and was often away from home for five days out of a week leaving corespondent as the primary caretaker for the six boys. On or about August 24, 2005, when respondent was away working and corespondent was alone caring for the boys, JH, the younger son from the union of respondent and CC, was hospitalized with extensive neurological, shaking-associated injuries. JH's injuries are permanent and he remains hospitalized.
At the first appearance the court removed all six boys from respondent and corespondent[FN3]

and placed them in the home of the grandparents, CC's parents and maternal grandparents to MH and JH. At respondent's request, the court held a hearing pursuant to Family Court Act § 1028 but denied a legal return of the boys, instead granting respondent extensive visitation. Respondent later consented to a [*4]neglect finding. The court proceeded with the dispositional hearing and heard testimony over a three-day period from four witnesses: petitioner's witness, caseworker Linda Krehling, and respondent's witnesses, Patrick Craig, Reginald L. Cox and respondent himself.
Caseworker Krehling, who at the time of the hearing had been involved with the case for only two months, admitted that respondent has a suitable apartment and is able to care for the five boys there. Respondent also visits weekly with JH at the hospital. She testified that respondent is an unemployed truck driver who attends college Monday and Wednesday nights and takes an on-line course. To fulfill requirements of the dispositional plan, respondent also takes parenting and anger management classes on Thursday nights. Krehling testified that this busy schedule prevents respondent from exercising his full court-ordered visitation. She also testified that respondent must employ the help of his teenage nieces in caring for the boys.
Respondent testified that five of the boys reside with him from Wednesday afternoons after daycare until Sunday. Every weekday morning he drives the elder boys to two different schools and the younger boys to day care. Respondent testified that he tries to visit daily with JH. On Saturdays respondent takes an eight-hour on-line class but is able to simultaneously care for the boys. Respondent wishes both to continue his schooling and to eventually become an FBI agent.
Respondent admitted that his schedule often forces him to rely on the grandparents for help in caring for the boys and that they are accommodating. For example, they kept the boys for a few weeks while respondent searched for an apartment. Additionally, when respondent was forced to accept employment that kept him on the road for four or five days per week and when respondent had conflicts because of his class schedules, they served as his backup in caring for the boys. Yet despite respondent's grueling schedule, he always exhibited resolve in planning for the return of his children, testifying that he thought his 22-year-old sister might move to help him. Since the dispositional hearing, respondent has instead found local work and his schedule is more flexible allowing him time at home with the boys, relying less on the grandparents. Respondent also employs the help of his two teenage nieces.
Respondent testified that he attends anger management and parenting classes every Thursday from 5:30 p.m. until 7:30 p.m. He has been to four classes and has had one mental health evaluation. Respondent participates willingly in his boys' therapy sessions. Since the dispositional hearing, respondent has successfully completed all court-ordered services to petitioner's satisfaction.
Respondent testified that he accepts the responsibility of caring for his stepsons, MN and TW, although they are unrelated to him. He testified that he would prefer to keep all the boys together but will respect the wishes of MN and TW should they wish to relocate with maternal relatives.
Reginald Cox testified that he is the coordinator of the father's program through Hillside Family Resource Centers, a program designed to support single fathers. The program deals with both parenting and domestic violence issues. Cox testified that respondent has perfect attendance, has been punctual and interactive in class and Cox has witnessed "nothing but [respondent's] honesty and desire to be committed to his own personal investment as well as his children." Respondent relayed to Cox that he [*5]desired employment closer to home so he could be there for the boys.
Patrick Craig, admissions counselor for Rochester Business Institute, testified that respondent enrolled on April 17, 2006 in an Associate's degree program in criminal justice. Some students can finish that particular program in 18 months. Respondent has classes on Monday and Wednesday evenings at 7:15 p.m. that last approximately two hours and on-line distance education classes. He testified that a neglect finding may implicate a future career in law enforcement.
At the close of the testimony, the court suspended judgment and has since reviewed the suspended judgment on August 25, 2006, September 21, 2006, November 15, 2006, December 7, 2006 and January 18, 2007. On September 21, 2006, after learning that respondent accepted local employment, the court legally returned the children to respondent increasing his time with the boys from four to five nights per week. On December 7, 2006, respondent reported that he completed his mental health treatment and rearranged his work and school schedules to maximize his time with the boys. At the final court appearance on January 18, 2007, all parties agreed that the suspended judgment did not need to be reviewed again until its expiration on July 6, 2007.[FN4]

Respondent completed all services required by the dispositional plan to petitioner's complete satisfaction.

Statement of Law

I. Application of Family Court Act § 1053

At the conclusion of a dispositional hearing after a neglect finding, the court shall enter an order of disposition, inter alia, (i) suspending judgment in accord with section 1053, or (ii) releasing the child to the custody of his parents or other person legally responsible, or (iii) placing the child (Family Ct Act § 1052 [a]). There are few reported New York cases where suspended judgments were granted after findings of neglect under Family Court Act § 1053[FN5]

(Matter of Melinda D., 31 AD3d 24 [2d Dept 2006]; Matter of Dana XX., 28 AD3d 1025 [3d Dept 2006]; Matter of Thomas JJ., 14 AD3d 953 [3d Dept 2005]; Matter of Frank Y., 11 AD3d 740 [3d Dept 2004]; Matter of Ziaire M., 309 AD2d 938 [2d Dept 2003]; Matter of Thelonius BB., 299 AD2d 775 [3d Dept 2002]; Matter of Demetrius X., 228 AD2d 804 [3d Dept 1996]; see also Hollenbeck v Boivert, 330 F Supp 2d 324, 328 [SD NY 2004] [court noted prior consent order of suspended judgment issued by Family Court] [all cases deal with issues unrelated to the suspended judgments themselves]). There is no New York State precedent detailing either the rationale of a court in suspending judgment under Family Court Act § 1053 or the consequences of such a disposition.
In a recent case, a family court in New Jersey examined suspended judgments [*6]as possible dispositions in neglect and abuse cases under the parallel New Jersey statute (NJ Stat Ann § 9:6-8.52).[FN6]

The court there, also finding no precedent, detailed that a suspended judgment is "a unique relief that may only be available in rare cases" and outlined four factors that should be considered in determining whether to grant a suspended judgment: (1) respondent's prior history; (2) seriousness of the offense; (3) respondent's remorse and acknowledgment of the abusive/neglectful nature of his or her act; and (4) respondent's amenability to correction, including compliance with court-ordered services, treatment and his or her efforts in rehabilitating the relationship with the children (State of N.J. Div. of Youth & Family Servs. v C.R., 387 NJ Super 363, 375, 379, 903 A2d 1129, 1136, 1138 [Fam Part, Cumberland County 2006]). While a suspended judgment was not ultimately deemed to be the appropriate disposition in that case, here, a suspended judgment is in the children's best interests.
Respondent does not have a prior child protective services history and his neglectful action in missing or ignoring the abusive behavior of his wife toward the boys had dire consequences resulting in JH's permanent injuries; however, respondent acknowledged his role and has willingly taken steps designed to correct his neglectful actions including successful completion of all services offered to him. Most important, respondent, as the father of four boys and stepfather of two boys, has reprioritized. While he found himself absent a great deal of the time because of his career as a truck driver, by the last court appearance, respondent found local employment and had rearranged his school schedule to be more present in his boys' lives. Additionally, respondent is planning for his future with the boys by his enrollment in a criminal justice program—to open the door to new employment opportunities which would allow him to better support his boys without the need to travel. Although the petitioner and the Law Guardian both oppose a suspended judgment, the only evidence offered against respondent was proof of respondent's lack of time and reliance upon the grandparents to help him care for the boys. The suspended judgment thus affords respondent an opportunity to prove that he can become self-sufficient to care for the boys.[FN7]

Thus far, as petitioner concedes, respondent has complied fully with the dispositional plan.

II. Consequences of a Suspended Judgment

Although this case meets the above-outlined criteria for a suspended judgment, at first blush it appears superfluous to issue a suspended judgment as the other dispositional alternatives encompass the same relief—either release of the children to [*7]custody of respondent parent (Family Ct Act § 1054) or placement of the children either with a relative resource or foster care (Family Ct Act § 1055), issuance of an order of protection (Family Ct Act § 1056), or supervision of respondent (Family Ct Act § 1057). Under a suspended judgment order, the subject children can either be released to the custody of a parent or placed depending upon the circumstances of the case (see Matter of Melinda D., 31 AD3d 24 [2d Dept 2006] [placement]; Matter of Dana XX., 28 AD3d 1025 [3d Dept 2006] [released to custody of respondent mother with order of protection]; Matter of Thomas JJ., 14 AD3d 953 [3d Dept 2005] [placement]; Matter of Frank Y., 11 AD3d 740 [3d Dept 2004] [placement]; Matter of Ziaire M., 309 AD2d 938 [2d Dept 2003] [placement with relative resource]; Matter of Thelonius BB., 299 AD2d 775 [3d Dept 2002] [placement]; Matter of Demetrius X., 228 AD2d 804 [3d Dept 1996] [placement]). As the statute itself and Uniform Rules for Family Court (22 NYCRR) § 205.50 (regulations) detail, a suspended judgment however offers additional unique relief that may in certain circumstances—as here—be in the best interests of the children.
What additional relief the suspended judgment affords is the source of dispute here. Specifically, respondent seeks a suspended judgment to afford him the future opportunity to eradicate the neglect finding—assuming successful completion of the required services in the dispositional plan. Petitioner and the Law Guardian oppose the suspended judgment—arguing that issuance of a suspended judgment would be the equivalent of eradicating the neglect finding and, in effect, condoning respondent's neglectful actions. Contrary to petitioner and the Law Guardian's arguments, a suspended judgment neither condones respondent's neglectful action nor does it necessarily eradicate the finding (Matter of Baby Girl W., 245 AD2d 830, 833 [3d Dept 1997]).
It is beyond cavil that suspending judgment under section 1053 is the least intrusive disposition and most favorable for respondent (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1053). Certain aspects of the suspended judgment are clear: its maximum duration is one year and it may be extended only after a hearing where exceptional circumstances are shown (Family Ct Act § 1053 [b]). Most important, the court may require progress reports throughout the year on the implementation of the suspended judgment dispositional order (Family Ct Act § 1053 [c]). Suspended judgments are imposed in lieu of an absolute determination and when such a suspension is directed, conditions are imposed, and the continuing jurisdiction of the court is thereafter available to reopen the proceeding in the event of a breach of these conditions, or if circumstances otherwise indicate the need (Besharov, Practice Commentaries, Family Ct Act § 1053).[FN8]

In this case, the court has already required the [*8]parties to appear five times since the suspended judgment was ordered. This has afforded the court flexibility to reevaluate whether the suspended judgment order continues to be in the boys' best interests and whether respondent has been complying with the terms of the order itself.
Beyond the clear statutory mandate of periodic reviews is the underlying purpose of suspended judgments. The unique relief of a suspended judgment is the opportunity afforded to a respondent who fully complies with the dispositional plan to later move to have the neglect finding and the petition itself dismissed.[FN9]

While there is no statute and a dearth of case law detailing that a respondent may so move, ample support is found both in the historical context of the suspended judgment and in courts' implementation of suspended judgments after permanent neglect findings (Family Ct Act § 633).

a. History

The concept of the suspended sentence—under which one convicted of a crime is not sentenced but is given an opportunity to avoid punishment by complying with conditions imposing good conduct—is well known in the criminal law. Before the creation of the modern Family Court, the former Children's Courts outside New York City had criminal jurisdiction in certain matters (former Children's Ct Act § 6 [4]). In the former Domestic Relations Court of New York City, the children's court division was also given the power to suspend judgment in adjudicating neglect cases—even though the court no longer had criminal jurisdiction (former Domestic Relations Ct Act § 61 [2]). The term employed in the noncriminal Domestic Relations Court was thus carried over to the Family Court with the decision to make the new Family Court entirely one of civil jurisdiction (Besharov, Practice Commentaries, Family Ct Act § 1053).
Although the term "suspended judgment" was carried over it is clear that suspended judgments ordered under the Family Court Act necessarily differ from suspended judgments under criminal law. Unlike criminal law where suspended judgments—or, modern day, conditional discharges (see Penal Law § 65.05)—are ordered after a defendant is convicted of a crime, a neglect finding in Family Court is not a conviction but a determination that neglectful action occurred—only so that conditions can be imposed to ameliorate the circumstances (Matter of Nina A.M., 189 AD2d 1010, 1012 [3d Dept 1993], citing Matter of Foreman, 75 Misc 2d 348, 349 [Fam Ct, Queens County 1973] ["To make a finding of neglect at this time for . . . previous acts of indiscretion would tend to stigmatize respondent and in fact penalize her at a time when she has proven to one and all that she is capable in every respect of properly caring for the child"]; but see Matter of Lewis T., 249 AD2d 646, 647-648 [3d Dept 1998] [even if no new remedies are needed in the dispositional order, the neglect finding should remain intact against respondent, maybe proving significant in potential future proceedings]). A suspended judgment thus affords a respondent the opportunity to correct his or her neglectful actions for the sole benefit of the children.

[*9]
b. Suspended Judgments after Permanent Neglect Findings

Family courts have similar options at the conclusion of dispositional hearings after findings of neglect (Family Ct Act § 1052) and permanent neglect—where courts may also suspend judgment, terminate parental rights or dismiss the petition (Family Ct Act § 631). In the context of permanent neglect findings, suspended judgments may be ordered pursuant to Family Court Act § 633 which—unlike Family Court Act § 1053—now includes a statutory presumption that a respondent has complied with the terms of a suspended judgment unless proven otherwise (Family Ct Act § 633 [d]). Even with this presumption, however, Family Court Act § 633 does not address what it means in practical terms for the respondent who has complied with all terms of the judgment once the period of suspension lapses—or more important, the consequences for the children.[FN10]

Suspended judgments are ordered more frequently after findings of permanent neglect and thus there is some case law interpreting the statute. As the statutes are so similar this court applies that case law to the suspension of judgment herein ordered under Family Court Act § 1053.
In Matter of Jonathan B. (5 AD3d 477 [2d Dept 2004], lv dismissed 2 NY3d 791 [2004] [decided before the 2006 amendments to Family Ct Act § 633]), the Second Department determined that a suspended judgment does not expire by operation of law (see also Matter of Josh Ray O., 267 AD2d 1048 [4th Dept 1999]); rather, the Family Court retains jurisdiction to consider a motion by any party to enforce, modify, or vacate it at any time, upon a proper factual showing of compliance or noncompliance with its terms and conditions. The court concluded that if respondent did not violate the terms and conditions of the order of suspended judgment, Family Court could "dismiss[ ] the permanent neglect petition on that ground, [after determining what] is in [the child's] best interests" (Matter of Jonathan B., supra, 5 AD3d at 479 [emphasis added]; see also Matter of Nicole Lee B., 256 AD2d 1103 [4th Dept 1998] [matter remanded to Family Court after expiration of a suspended judgment for a hearing to determine the children's best interests]). Even if a respondent complies with the dispositional order, however, a court shall not dismiss the petition if it is not in the child's best interest to do so (Matter of Saboor C., 303 AD2d 1022 [4th Dept 2003] [where although the parties consented that respondent had complied with all the terms of the dispositional order it was nonetheless in the child's best interest to terminate respondent's parental rights due to the child's bond with her foster family]). While with the statutory amendments a respondent no longer is required to prove compliance with the dispositional order—because the order is necessarily deemed satisfied unless proven otherwise—a respondent may wish to move for dismissal of the petition itself so that the finding of [*10]permanent neglect is not left intact (Matter of Jonathan B., supra, 5 AD3d at 479).
Likewise, at the expiration of the suspended judgment herein ordered—where there is no statutory presumption of compliance with the dispositional order—this court will hold a further hearing to determine (1) whether respondent has complied with the terms of the dispositional order, (2) the best interests of the boys, and, if appropriate, (3) whether the court's aid is still required on the record before it (see infra; Family Ct Act § 1051 [c]). If at the hearing petitioner shows by competent proof that respondent has not complied with the terms of the suspended judgment (Family Ct Act § 1071), then the court may revoke the suspension of judgment "and enter any order that might have been made at the time judgment was suspended" (Family Ct Act § 1071)—i.e., placement or continued supervision. On the other hand, if the court determines that respondent has fully complied with the terms of the suspended judgment, the court may dismiss the underlying neglect petition if in the children's best interests (Matter of Jonathan B., supra, 5 AD3d at 479; see also State of N.J. Div. of Youth & Family Servs., supra, 387 NJ Super at 374, 903 A2d at 1135 ["a suspended judgment allows rehabilitative or supervisory services in lieu of a permanent adjudication of abuse and neglect when services can reasonably be expected to deter future abuse and neglect" (emphasis added)]) and if the court's aid is no longer required (Family Ct Act § 1051 [c]). Although Family Court Act § 1052 differs from Family Court Act § 631 because it does not offer dismissal as a dispositional option, a neglect petition may be dismissed when the court's "aid is not required on the record before it" (Family Ct Act § 1051 [c]).
In Matter of G. (91 Misc 2d 911 [Fam Ct, NY County 1977]), the court dismissed a neglect petition after a hearing where the court was not persuaded that respondent or her children were presently or would in the future be in need of the court's aid or assistance. The court described that there was "a normal, healthy and affectionate parent-child relationship" and there was "no danger of present or future neglect" and respondent was rehabilitated (at 914; see also Matter of Arthur A., NYLJ, Sept. 26, 2000, at 32, col 4 [Fam Ct, Queens County]; Matter of Thomas, NYLJ, Mar. 3, 2000, at 32, col 4 [Fam Ct, Queens County]; Matter of Hickey, 124 Misc 2d 667 [Fam Ct, Suffolk County 1984] [court's aid was not required concerning allegations of educational neglect because the subject child, who had attained age 16, was no longer subject to the compulsory education law]).
Here, if respondent continues on the path he is on, respondent may demonstrate that the court's aid is no longer required on the record before it. Thus far respondent has complied with all the services recommended by petitioner and neither petitioner nor the Law Guardian indicate any concerns with respondent's care of the boys. Of course, dismissal may not be appropriate at the end of the suspension period if there are indications that some continuing supervision may be required or if respondent fails to adequately admit responsibility (Matter of Baby Girl W., 245 AD2d 830 [3d Dept 1997]; see also Matter of Elysa QQ., 249 AD2d 857 [3d Dept 1998]; Matter of Brian TT., 246 AD2d 826 [3d Dept 1998]; Matter of Jessica S., 13 Misc 3d 505 [Fam Ct, Kings County 2006]).
Unlike in Matter of Lewis T. (249 AD2d 646 [1998], supra), where the Third Department reversed Family Court's dismissal of a neglect petition after finding that the aid of the court was not required in light of a previous order granting the children's nonrespondent father sole legal custody—here the court held a dispositional hearing and considered all [*11]alternative dispositional remedies—and will hold an even additional hearing to further evaluate whether the court's aid is or will be needed. Insofar as Matter of Jessica S. (supra, 13 Misc 3d at 510-511) holds that courts lack authority to dismiss a petition pursuant to section 1051 (c) after a fact-finding order of neglect has been entered, appellate courts have held otherwise (see Matter of Angela D., 175 AD2d 244 [2d Dept 1991] [even though petitioner met its burden of establishing neglect, the aid of the court was no longer needed and dismissal of the case was warranted pursuant to Family Ct Act § 1051 (c) where respondent mother had moved to Maryland and authorities there closed their file]).
Finally, the court notes that despite respondent's desire to seek a suspended judgment for the purpose of allowing him to pursue future employment in law enforcement, this court can in no way guarantee such a result. Even if respondent fully complies with the terms of the suspended judgment and the court holds that its aid is no longer required and it is in the boys' best interests to dismiss the neglect petition, this will not eliminate respondent's name from any listing with the New York State Central Register of Child Abuse and Maltreatment and, therefore, may still effect future employment opportunities. Dismissal of the neglect petition—if warranted—however will at least allow respondent the opportunity to seek expungement of his name from the Central Register (see McReynolds v City of New York, 18 AD3d 316 [1st Dept 2005], lv denied 5 NY3d 707 [2005], cert dismissed 546 US 1027 [2005] [a neglect finding in Family Court constitutes collateral estoppel barring a respondent from seeking an administrative expungement]; Social Services Law § 422 [8] [b] [ii]). That possibility may be in the best interests of the boys if it would—as respondent argues—open new avenues for respondent to better support his boys while working locally.
Now, therefore, it is hereby ordered that judgment is suspended; and it is further ordered that respondent comply fully with the terms of petitioner's dispositional plan ordered August 4, 2006.

Footnotes

Footnote 1: Indeed, upon extensive research this court found only minimal case law where courts granted suspended judgments upon neglect findings. Of those cases, none analyzed the consequences of such disposition.

Footnote 2: The court notes that two of the boys, MN and TW, are not the biological children of respondent and, thus, are placed with respondent. Petitioner has reported that corespondent's sister who resides in Arkansas may petition for their custody. 

Footnote 3: Corespondent pleaded guilty in County Court to the first degree assault of her stepson, JH, and received a 13½-year sentence of incarceration with five years' postrelease supervision. Based upon this conviction, this court granted petitioner's motion for summary judgment finding that corespondent severely abused JH and derivatively abused and neglected MH, MN, TW, CH and NH. After a dispositional hearing, this court issued a decision, inter alia, granting corespondent supervised visitation with her sons MN and TW (Matter of M.N., 14 Misc 3d 1238[A], 2006 NY Slip Op 52580[U] [2006]).

Footnote 4: Family Court Act § 1058 does require however that petitioner report to the court on the status and circumstances of the family and services 60 days prior to the expiration of the order.

Footnote 5: Many family court orders are issued only orally. It is therefore unclear how often the suspended judgment disposition is ordered in New York State family courts. In Monroe County Family Court, the disposition is seldom employed.

Footnote 6: After a finding of abuse or neglect, New Jersey law offers the same dispositional alternatives: (1) suspended judgment; (2) release to parent; or (3) placement (NJ Stat Ann § 9:6-8.51). The statute outlining the suspended judgment alternative is similar to Family Court Act § 1053 and reads, in pertinent part, that the court shall define permissible terms and conditions of a suspended judgment (NJ Stat Ann § 9:6-8.52 [a]); and that the maximum duration of a suspended judgment shall be one year unless exceptional circumstances require an additional year-long extension (NJ Stat Ann § 9:6-8.52 [b]).

Footnote 7: Raising six boys alone is no easy task. Indeed, it cannot be deemed neglectful if respondent needs the support of family.

Footnote 8: The regulations outline the terms and conditions of an order suspending judgment and require that the order be related to the adjudicated acts or omissions of respondent and contain at least one of eight enumerated terms and conditions. Similar to other dispositional orders, the suspended judgment order outlines all services that respondent must complete in order to correct the circumstances that led to the children's removal or involvement with the department.

Footnote 9: See e.g. Hollenbeck v Boivert, 330 F Supp 2d 324, 328 (SD NY 2004) (where upon consent of the parties, the neglect finding would be deemed vacated and the underlying petition dismissed if no motion was filed to vacate or modify the suspended judgment order). 

Footnote 10: Family Court Act § 633 (d) states that if the period of suspension lapses and no motion has been filed alleging a violation or seeking extension "the terms of the disposition of suspended judgment shall be deemed satisfied and an order committing the guardianship and custody of the children shall not be entered." The statute does not address the status of the underlying petition or how the permanency goal can thereafter be achieved (see Family Ct Act § 633 [g] [indicating only that permanency hearings shall continue]).